COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Annunziata and Senior Judge Coleman
Argued at Richmond, Virginia


TYRONE ORLANDO PEYTON
                                              OPINION BY
v.    Record No. 0547-02-2        JUDGE ROSEMARIE ANNUNZIATA
                                            AUGUST 26, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                     George F. Tidey, Judge

        Steven D. Benjamin (Betty Layne DesPortes;
        Benjamin & DesPortes, P.C., on briefs), for
        appellant.

        Michael T. Judge, Assistant Attorney General
        (Jerry W. Kilgore, Attorney General, on
        brief), for appellee.


     On appeal, Tyrone Orlando Peyton challenges the validity of

the revocation of his suspended sentence by the Circuit Court of

Henrico County.  We find no error and affirm.

                              Facts

     The material facts underlying this case are not in dispute.

On April 3, 2001, Peyton was convicted of possession of cocaine

with intent to distribute.  On July 12, 2001, the trial court

sentenced him to 10 years in prison and suspended 7 years.  The

trial court further ordered that Peyton be evaluated for

participation in an alternative sentencing program pursuant to

Code § 19.2-316.2.  Peyton was accepted into the program, and

the trial court suspended the balance of his sentence on the

condition that he complete the program. On October 1, 2001, he was transferred from local confinement to a detention center in accordance with the alternative sentencing program.

In January 2002, Peyton began vomiting blood while at the detention center and was taken to the hospital. He had approximately one month remaining in the program. Peyton was discharged from the detention center program on January 15, 2002 due to "medical/psychological reasons." In a show cause proceeding on February 7, 2002, the trial court determined that Peyton had violated the terms of his suspended sentence by not completing the program and imposed the original three-year active sentence, with credit for time served. The trial court stated that Peyton's participation in the detention center program "didn't work out."

## Analysis

On appeal, Peyton argues the trial court abused its discretion in revoking his suspended sentence, on the ground his discharge from the detention center was not due to his willful conduct or behavior. We find his contention without merit.

"A trial court has broad discretion to revoke a suspended sentence and probation based on Code § 19.2-306, which allows a court to do so 'for any cause deemed by it sufficient.' The court's findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion." Davis v. Commonwealth, 12 Va. App. 81, 86, 402 S.E.2d 684, 687 (1991)

-

(citations omitted).  Furthermore, the trial court "'undoubtedly has the power to revoke [the suspension of a sentence] when the defendant has failed to comply with the conditions of the suspension.'"  Russnak v. Commonwealth, 10 Va. App. 317, 321, 392 S.E.2d 491, 493 (1990) (quoting Griffin v. Cunningham, 205 Va. 349, 354, 136 S.E.2d 840, 844 (1964)).

Code § 19.2-316.2(A) authorizes courts to "consider[]" committing certain non-violent felons to a detention center in lieu of an active period of incarceration.[1]  The detention centers operate as part of the Department of Corrections, pursuant to Code § 53.1-67.7.  Code § 19.2-316.2(A)(2) requires a prospective participant to meet certain physical and emotional requirements as a condition for acceptance and participation in the program.  Satisfying these requirements is a prerequisite to

_____

[1] Code § 19.2-316.2(A) provides:

> A defendant who otherwise would have been sentenced to incarceration for a nonviolent felony as defined in § 19.2-316.1 or who has been previously incarcerated for a nonviolent felony as defined in § 19.2-316.1 but otherwise meets the following criteria and (i) who is determined by the court to need more security or supervision than provided by the diversion center incarceration program under § 53.1-67.7, (ii) whose age or physical condition disqualifies him from the Boot Camp Incarceration Program under § 53.1-67.1, and (iii) who can benefit from a regimented environment and structured program, may be considered for commitment to a detention center established under § 53.1-67.8 . . . .

-

the Department's recommendation that the trial court commit the defendant to the program.[2]  Code § 19.2-316.2(A)(4) further provides:  "Upon a finding that the defendant . . . was removed from the program by the Department for intractable behavior . . . the court may revoke all or a part of the probation and suspended sentence . . . ."  Code § 19.2-316.1[3] defines "Intractable behavior," in part, as:  "behavior which, in the determination of the Department of Corrections, (i) indicates an inmate's unwillingness or inability to conform his behavior to that necessary to his successful completion of the program[.]"

Applying these statutory provisions to the case at bar, we find that the trial court did not abuse its discretion in revoking Peyton's commitment to the detention center and his

---

[2] Code § 19.2-316.2(A)(2) provides:

> Upon determination that (i) such defendant is physically and emotionally suited for the program, (ii) such commitment is in the best interest of the Commonwealth and the defendant, and (iii) facilities are available for the confinement of the defendant, the Department shall recommend to the court in writing that the defendant be committed to the Detention Center Incarceration Program.

[3] Code § 19.2-316.1 specifically addresses the "Boot Camp Incarceration Program" while § 19.2-316.2 addresses the "Detention Center Incarceration Program."  Both sections use the phrase "intractable behavior," as a ground for removal from the programs.  The phrase is only defined in § 19.2-316.1.  Thus, we have cited to § 19.2-316.1 for purposes of defining "intractable behavior," despite the fact that Peyton entered a detention center program pursuant to § 19.2-316.2.

-

suspended sentence.  Code § 19.2-316.1 does not provide that an inmate's "unwillingness" to continue the program is the sole or exclusive reason warranting removal from a detention center program and the revocation of a suspended sentence pursuant to Code § 19.2-316.2(A)(4).  The Code also provides that an inmate's "inability" to conform his behavior to program requirements will justify his removal from the program and the revocation of a suspended sentence.  Code § 19.2-316.1.  Moreover, Code § 19.2-316.2(A)(2) provides that a "determination that . . . [a] defendant is physically . . . suited for the program" is a prerequisite to being recommended or accepted into the program.  When, subsequently, a defendant can no longer meet the initial requirements for participation, and is no longer "physically suited" for the detention program, neither the program nor the court is required to continue him in the program.  Where, as here, participation in a detention center program is a required condition under Code § 19.2-316.2(A) to qualify a nonviolent felon for diversion in lieu of incarceration, we find that the trial court did not abuse its discretion in revoking the suspended sentence.

Peyton began vomiting blood in January 2002, while he was in the program, and had to be taken to the hospital.  When he returned from the hospital, he continued to have abdominal pain.  Shortly thereafter, the Department of Corrections discharged him from the detention center for "medical/psychological reasons."

-

From this evidence, the trial court concluded that the Department of Corrections had determined Peyton no longer met the physical requirements for participation in the program and, thus, did not have the ability to conform his behavior to that necessary to complete the program. The trial court acted within its discretion under Code § 19.2-316.2(A) when it revoked Peyton's suspended sentence.

Peyton relies on our holding in Duff v. Commonwealth, 16 Va. App. 293, 429 S.E.2d 465 (1993), to support his contention that "if noncompliance [with the terms of the suspended sentence] is not willful, revocation is unreasonable." Duff is distinguishable from the case at bar because the suspended sentence in Duff did not involve the application of express statutory provisions establishing specific criteria to qualify for diversion rather than incarceration.[4] Whether Code § 19.2-316.2(A)(4) requires willful conduct in order to justify revocation of a suspended sentence was not at issue in Duff and Peyton's reliance on it is, therefore, misplaced.

---

[4] In Duff, the defendant was convicted of embezzlement and received a partially suspended sentence, on the condition that he make restitution payments. When he failed to comply with the restitution condition, the trial court revoked his suspended sentence. The evidence established that the defendant's failure to make restitution payments resulted from various financial setbacks and was not "willful." Accordingly, we reversed the trial court's decision for abuse of discretion, on the ground that the revocation was unreasonable. Duff, 16 Va. App. at 298, 429 S.E.2d at 468.

-

Peyton further argues that the trial court abused its discretion in revoking the suspended sentence because the trial court erroneously believed it was required to impose Peyton's original sentence. We disagree with this contention. Assuming the trial judge was unaware that he had the discretion to continue the suspended sentence he earlier imposed, Peyton explicitly informed him of that principle during the motion to reconsider. After the trial court revoked Peyton's suspended sentence, Peyton made a motion to reconsider, in which he specifically stated to the court,

> I wanted to make sure that I had done my job and noted that he is before you with, or had been before you with ten years suspended and that this court had the power and the jurisdiction not to impose any of that, not to revoke any of that suspended sentence.

After hearing the motion, the trial judge stated, "[H]e gets the three year sentence. That's plain and simple. Same as last time . . . I don't have any different feeling about it." The trial judge considered the argument and responded that his decision remained the same. Thus, we find no abuse of discretion.

For the foregoing reasons, we affirm.

                                              <u>Affirmed.</u>

-

Benton, J., dissenting.

"Although the power of the court to revoke a suspended sentence granted by . . . [Code § 19.2-306] is broad, it is not without limitation." Duff v. Commonwealth, 16 Va. App. 293, 297, 429 S.E.2d 465, 467 (1993). By well established rules of decision "'[t]he cause deemed by the court to be sufficient for revoking a suspension must be a reasonable cause.'" Id. Thus, we have held that "a reasonable failure to [conform to the condition of the suspension] negates a reasonable cause to revoke a suspended sentence." Id. at 298, 429 S.E.2d at 467.

The evidence established that the trial judge suspended Peyton's prison sentence for a non-violent crime on the condition that he participate in an alternative detention program. Peyton was accepted in the program and successfully completed three months of the program. A month before he would have finished the program, Peyton began to develop abdominal pains and was discharged from the program. The trial judge indicated it "sounds like ulcers." Although the trial judge found that he did not question Peyton's sincerity or desire to finish the program, he nevertheless revoked Peyton's suspended sentence and ordered him to prison, noting "I don't think there's anything I can do . . . it didn't work out."

The statute governing the detention program contains the following proviso:

-

> Upon the defendant's (i) voluntary withdrawal from the program, (ii) removal from the program by the Department for intractable behavior as defined in § 19.2-316.1, or (iii) failure to comply with the terms and conditions of probation, the court shall cause the defendant to show cause why his probation and suspension of sentence should not be revoked. Upon a finding that the defendant voluntarily withdrew from the program, was removed from the program by the Department for intractable behavior, or failed to comply with the terms and conditions of probation, the court may revoke all or part of the probation and suspended sentence and commit the defendant as otherwise provided in this chapter.

Code § 19.2-316.2(A)(4).

I would hold that the trial judge abused his discretion by revoking the suspended sentence and ordering Peyton to prison. The record does not establish the existence of any of the statutory conditions that would support the revocation of the suspended sentence. Peyton demonstrated neither intractable behavior nor an unwillingness or refusal to finish the program.

In Duff, we reversed the trial judge's revocation of a suspended sentence because the evidence proved that Duff's "failure to pay the restitution resulted from an inability to pay it rather than an unwillingness or refusal to do so." 16 Va. App. at 296, 429 S.E.2d at 466. We reasoned as follows:

> [T]he trial court's determination that Duff's failure to pay the restitution was neither willful nor the result of fraudulently secreting funds precludes a determination that his failure to pay the restitution was unreasonable. Rather, the

-

court's determination inexorably leads to the conclusion that Duff simply did not have the ability to pay the restitution. Moreover, the evidence suggests and supports no other determination. Under such facts, we hold as a matter of law that the evidence was insufficient to revoke the suspended sentence and that the trial court, in so doing, abused its discretion.

In reaching this result, we are not unmindful of the conscientious concerns of the trial judge for the victims of Duff's crime, and for Duff, that are patently clear from the record. We share the concern that restitution should be completed within a reasonable period of time. Nor do we mean to suggest that Duff's current financial situation prevents the trial court from imposing alternate means of punishment upon him. Rather, the court is required to consider reasonable alternatives to imprisonment and not merely to automatically revoke the suspended sentence.

Id. at 298, 429 S.E.2d at 468.

Peyton's failure to finish the program resulted from a medical inability to continue and was not the result of an unwillingness or refusal to do so. This illness was not a reasonable cause to revoke Peyton's suspended sentence. Code § 19.2-316.2 allows the judge to revoke all or part of the suspended sentence if the defendant voluntarily withdraws, is removed "for intractable behavior," or violates the terms of probation. The majority, however, upholds the trial judge's decision and cites Peyton's physical illness as the event that deprived him of "the ability to conform his behavior to that necessary to complete the program." Simply put, the connection

-

between vomiting blood and "intractable behavior" is tenuous and unconvincing.

The majority further reasons that the trial judge's revocation was not an abuse of discretion because being "physically suited" is a prerequisite for acceptance into the program. There is a clear distinction, however, between the terms of acceptance into the program and cause for removal from the program. The majority blurs the distinction and incorporates one into the other. The statute does not equate "intractable behavior" with a person's failure to complete the program through illness or a lack of individual fault. Code § 19.2-316.1 defines "Intractable behavior" in terms that denote willful or obstinate conduct.

As in Duff, I would reverse the trial judge's revocation of the suspended sentence and remand to consider reasonable alternatives to imprisonment.